## Commonwealth ex rel. *v.* United States Annuity Society, Appellant.

20

Argued January 12, 1931.   Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Thomas Wickersham,* of *Wickersham & Wickersham,* for appellant.—The investment of the funds of defend-

ant corporation is not controlled by the Act of May 20, 1921, P. L. 916.

Defendant is not in such a condition that its continuation of business will be hazardous to its members or to the public: Com. v. Ministers' Protective Society, 294 Pa. 6; Speer v. Oil Co., 239 Pa. 180; Hayes v. Beneficial Union, 35 Pa. Superior Ct. 142; Noble v. Assn., 224 Pa. 298.

Defendant has not wilfully violated its charter or any law of the Commonwealth to such an extent as to warrant its dissolution: Lafferty v. Benefit Assn., 259 Pa. 452; Com. ex rel. v. Baseball Club, 290 Pa. 136; Com. v. Del. & H. C. & C. Co., 43 Pa. 295.

*Harold D. Saylor,* Deputy Attorney General, with him *William A. Schnader,* Attorney General, for appellee.—Defendant violated its charter: Marcus v. Heralds of Liberty, 241 Pa. 429; Com. v. Bank, 28 Pa. 383.

Defendant violated the laws of the Commonwealth: Wagner Free Institute v. Phila., 132 Pa. 612.

Defendant violated its own by-laws and regulations: Com. v. Vandegrift, 232 Pa. 54.

OPINION BY MR. JUSTICE WALLING, February 2, 1931:

In 1908 a Court of Common Pleas of Allegheny County granted the United States Annuity Society, defendant, a corporate charter as a beneficial and protective association, under the Act of April 6, 1893, P. L. 10, and its supplements; since which time it has been doing business in Pittsburgh. An investigation, started in 1927 by the state insurance department, disclosed such a condition as caused the attorney general to institute this quo warranto proceeding to dissolve the corporation. An answer was filed admitting, explaining or denying the averments of the suggestion. The court took testimony and after a full hearing entered a final decree that the corporation was in such a condition that its further transaction of business would be hazardous

to its members and to the public; also dissolving the corporation and placing its property and affairs in the hands of the state insurance commissioner. Therefrom the defendant brought this appeal.

Little need be said in vindication of the decree. The facts found on clear evidence and admissions indicate the propriety thereof. Those controlling the corporation had entirely departed from its chartered powers and purposes, that of a secret fraternal beneficial society with ritualistic work, subordinate lodges and benefit certificates. It had not held a subordinate lodge meeting in ten years, and, instead of benefit certificates, it issued practically old line insurance policies, without legal right so to do. Whenever a beneficial society attempts to issue old line insurance it does an ultra vires act, for such society is entirely different from a life insurance company. See Com. v. Equitable Beneficial Assn., 137 Pa. 412; Lafferty v. Supreme C. C. Mut. B. Assn., 259 Pa. 452. The language of Mr. Justice ELKIN, speaking for the court, in Marcus v. Heralds of Liberty, 241 Pa. 429, 435, that, "Indeed, after a careful reading of all the evidence presented by this record we discover. that but little attention is paid to the social, fraternal and benevolent features of the order; but, on the other hand, the plan of organization, the method of soliciting business, the emphasizing of the advantages of being insured, the minimizing and in large areas the elimination of the lodge system, and numerous other like features, all point to but one end, which is, that, under the guise of a beneficial association, defendant is doing an insurance business," applies equally here. Furthermore, those in control in the instant case secured a charter for a Delaware corporation named United States Annuity Agency Company, having in the main the same officers as the defendant. Solicitation for new business was made through the Delaware company under a contract giving it ninety per cent of the first year's premium and ten per cent thereafter, although the evidence indicates

that only seventy-five per cent of the first year's premiums was retained by it. These commissions were paid to the officers of the Delaware company for some years after its charter was forfeited for nonpayment of taxes.

Moreover, the defendant has for years been under the control of its president, who has exploited it for the benefit of himself and members of his family, who have been on the payroll at excessive salaries. The defendant's funds were loaned in total disregard of its by-laws, which require that each loan shall be on the written approval of the finance committee. This requirement was entirely disregarded in recent years and the president, in effect, made the loans and investments as he saw fit. Again, funds of the defendant were loaned on second mortgages and in one case on land in West Virginia, which was sold for taxes. Some of its funds were loaned on coal land and on the security of coal stock, and some invested in corporate stock. These transactions were in disregard, not only of its by-laws and the statutes relating to trust funds, and especially that of the funds of insurance companies, but also of common business prudence.

Whether all the provisions of the Act of May 20, 1921, P. L. 916, "defining fraternal benefit societies and their status, etc.," apply to the defendant, whose charter had been previously granted, it is not necessary to decide, for the misconduct of those in charge of the defendant, as above outlined, in brief, was so manifest as to require the dissolution of the corporation independent of this statute. The power of the attorney general to proceed by quo warranto to dissolve a corporation for sufficient cause is fundamental. "A private corporation may lose its franchises by a misurer or a nonuser of them, and the Commonwealth may resume them under a judicial judgment upon a quo warranto to ascertain and enforce the forfeiture. Misuse or abuse of corporate privileges consists of any positive act in violation of the charter,

and in derogation of public right, wilfully done, or caused to be done, by those appointed to manage the general affairs of the corporation": Savidge on Pennsylvania Corporations, volume 1 (2d edition), section 149, page 159. "Failure of purpose of a corporation is a sufficient reason for winding up its affairs...... The court has power to decree a dissolution on this ground independently of statute. It has even been held that statutes which specify grounds and provide methods of dissolution which make no provision for forfeiture on the ground of failure of purpose of the corporation are not exclusive, and that a dissolution may be had on the ground of failure of purpose, even though statutory grounds for forfeiture may not exist": 14A C. J. 114, 115, section 3724. Misuse or abuse of corporate franchises will justify a forfeiture of the charter (see Erie & North East R. R. v. Casey, 26 Pa. 287), and this is especially true if long continued.

The trial court in the instant case proceeded with caution, as should ever be done in such cases; but where corporate business is done, as here, in total disregard of charter powers and public safety, the only proper course is dissolution. This will be decreed notwithstanding the corporation, as in the instant case, is actuarially solvent. Here, there was a long continued course of illegal acts and not the mere exercise of one power not granted, which might be eliminated and the charter remain, as in Com. ex rel. v. Amer. Baseball Club of Phila., 290 Pa. 136.

The decree is affirmed at the cost of appellant.